Mitchell A. Stephens (11775)
Jordan Pate (17634)
**JAMES DODGE RUSSELL & STEPHENS, P.C.**
545 East 300 South
Salt Lake City, Utah 84102
Telephone: (801) 363-6363
Email: mstephens@jdrslaw.com
        jpate@jdrslaw.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| "LILY," "SARAH," "SLOANE," "VIOLET," "MARIA," "APRIL," "JULIE," and "ASTER," <br><br> *Plaintiffs,* <br><br> vs. <br><br> ROBERT CHARLES LOWENHAUPT, <br><br> *Defendant.* | PLAINTIFFS' MOTION TO PROCEED WITH PSEUDONYMS <br><br> Case No. 2:26-cv-00460 |

Plaintiffs "Lily," "Sarah," "Sloane," "Violet," "Maria," "April," "Julie," and "Aster," (together, "Plaintiffs") move this Court for an order allowing them to proceed in the above-captioned matter using pseudonyms. Plaintiffs make this request to protect themselves from harassment, injury, ridicule, and personal embarrassment.

## STATEMENT OF RELEVANT FACTS

Plaintiffs assert claims for civil damages against one of the criminal defendants who has been convicted of possessing their images. As set forth in the complaint herein, and the Declarations of Carol L. Hepburn and Susanna L. Southworth filed as Exhibits A-B hereto, Plaintiffs are the subjects of several series of child pornography videos and images (child sex abuse material, hereinafter "CSAM"). These images, which form the basis of the claims herein, are highly personal, intimate, and humiliating to the plaintiffs.

Each of the Plaintiffs, when young children, were raped and required by their abusers to commit a myriad of sexual acts. In each case, the sexual abuse of Plaintiffs was photographed and videoed and these images were distributed and traded on the internet among pedophiles and child pornography enthusiasts. Counsel for Plaintiffs, Hepburn and Southworth [*see* Declarations filed herewith], continue to receive notices from the United States Department of Justice that the images of the Plaintiffs are the subject of prosecutions for child pornography offenses around the country.

Each of the Plaintiffs has been notified that she is a victim of Defendant Lowenhaupt's criminal offense.

Plaintiff Lily was sexually abused from the age of ten to eleven in a number of scripted and costumed vignettes, which have included graphic sex as well as bondage. She has been stalked on the internet and through email by apparent pedophiles and child pornography enthusiasts who have propositioned her and made lewd inquiries of her. One such stalker was convicted in the United States District Court of Nevada of transporting her images and stalking her. (*See* Judgment in *United States v. Gregory Hoffman,* USDC Nev. No. 08-CR-00027, attached as Exhibit 1 to Declaration of Carol L. Hepburn (Ex. A)).

On the internet today are blogs in which child pornography consumers debate various issues related to Lily's sexual abuse and performance in these videos. The postings are crass and disgusting and include speculation as to whether, as a ten-year-old child, she enjoyed having forced sex with an adult male. When, years ago, Lily briefly spoke publicly about the videotaped rape and sexual exploitation she suffered, she was contacted by four separate individuals who sought to communicate with her about the images of her abuse; one even tried to send her pornographic images. She now makes every effort to maintain her anonymity.

When Plaintiff Sarah was four to eleven years old, she was sexually abused and exploited. Sarah was forced to endure sexual contact and penetration with an adult male and bestiality in order to produce child pornography images and videos. These images and videos were produced for mass distribution and sold for money over the internet and are still widely distributed today.

Plaintiff Sloane was a school-aged girl when, over multiple years, her abuser put her in costume, sexually and violently assaulted her, and published images and videos of the abuse on the internet where they continue to be rampantly traded and talked about by CSAM consumers. She suffers a rational paranoia, hypervigilance, and high anxiety. She has experienced direct and frightening contact from consumers of her CSAM. She is afraid of personal contact by those who view her images.

Plaintiff Violet was sexually abused by an adult male between approximately 4 and 8 years of age. The abuse Violet suffered occurred at the hands of an adult male in a position of power at Violet's elementary school, where she was forced to engage in oral sex with the perpetrator who recorded and shared the images of Violet's sexual abuse online.

Plaintiff Maria was ten years old when a child abuser reached through the internet to groom and then extort her to send him self-produced sexual videos of herself. She has been humiliated and sunk into profound depression. Her videos continue to circulate frequently on the internet.

Plaintiff April was abused from the age of five to eight years old by a perpetrator that was trusted in the family. During this time, she was sexually assaulted orally, vaginally, and anally. Numerous images and videos of her abuse were taken and then circulated online, traded from perpetrator to perpetrator for their perverse pleasure. April knows that these images and videos are online, and fears being recognized. She deals with significant anxiety and emotional distress as a result.

Plaintiff Julie was sexually abused up to the age of twelve by her father in the family home. This abuse involved genital-genital intercourse, anal-genital intercourse, oral-genital intercourse, and masturbation. Her father abused her in unthinkable ways and posted those images online. Some of the images portray violent, sadistic, and masochistic behavior. Julie was made to engage with men online. Her father even ordered Julie to molest her younger sister, Ivy, while he watched and recorded. Numerous images and videos of her abuse were taken and then circulated online, and widely traded among perpetrators for their perverse gratification. She worries about others recognizing her from the images and videos.

Plaintiff Aster was subjected to prolonged sexual abuse beginning at the vulnerable age of eight. She retains clear and distressing memories of the abuse, including her abuser's documentation of the abuse on camera. Aster recalls that the abuser modified the surroundings to avoid detection and positioned recording equipment to capture the abuse. The resulting "Lexie" series comprises graphic and exploitative material depicting severe sexual abuse. The continued

circulation of these images has left Aster with an ongoing fear of being located, profoundly undermining her sense of personal safety, autonomy, and control.

Plaintiffs have suffered greatly due to being the subjects of these widely circulated images and videos; they suffer psychologically in a number of different manners; each is hyper-vigilant, suffers a rational paranoia, has fear and anxiety, and has had varying bouts of severe depression and anger to name a few.

## ARGUMENT

The Federal Rules of Civil Procedure do not explicitly authorize, nor absolutely prohibit, the use of fictitious names by plaintiffs or other parties. The Tenth Circuit holds that pseudonymous pleading may be allowed in cases "involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *See M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (same); *Luo v. Wang*, 71 F.4th 1289, 1294, 1296 (10th Cir. 2023) (same).

The Tenth Circuit emphasizes that courts must exercise informed discretion and weigh the plaintiff's privacy and safety interests against the public's right of access and any prejudice to the defendant. *See M.M.*, 139 F.3d at 803; *Femedeer*, 227 F.3d at 1246; *Luo*, 71 F.4th at 1296. "[T]he need for party anonymity must outweigh the presumption of openness." *Luo*, 71 F.4th at 1298 (cleaned up); *M.M.*, 139 F.3d at 803. This case falls squarely into the category of the exceptional case that warrants the plaintiffs proceeding under pseudonyms.

A.      THE UTMOST SENSITIVITY AND PRIVACY IS NEEDED IN THIS CASE

"Significant privacy interests" may suffice to allow a party to proceed under a pseudonym. *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001); *Femedeer*, 227 F.3d at 1246 (case must "involv[e] matters of a highly sensitive and personal nature"); *see also Coe v. United States Dist. Court for Dist. of Colorado*, 676 F.2d 411, 416 (10th Cir. 1982) (listing cases allowing pseudonyms for challenges to laws involving birth control, abortion, and homosexuality, among others, "[w]here the issues involved are matters of a sensitive and highly personal nature"). In fact, the Supreme Court has given the practice implicit recognition in the abortion cases, *Roe v. Wade*, 410 U.S. 113 (1973), and *Doe v. Bolton*, 410 U.S. 179 (1973), "with minimal discussion." *Coe*, 676 F.2d at 415. The Court in *Coe* engaged in a balancing test and found that by weighing the need advanced by Dr. Coe to maintain individual and professional privacy rights against the right of the public to know all of the facts surrounding the formal proceedings posited with the Colorado State Board of Medical Examiners Board related to complaints lodged against him and threatened professional disciplinary proceedings, the doctor's privacy interest did not outweigh the public's interest. *Id*. at 412, 418. By contrast, this case, which involves sexual abuse survivors whose images have been disseminated, should be recognized as justifying pseudonymity, especially where disclosure would result in further injury or re-victimization.

The Supreme Court recognizes that the individuals depicted in images of child pornography are harmed by the circulation and viewing of those images. *See New York v. Ferber*, 458 U.S. 747, 759 (1982) (explaining that the suffering of victims of childhood sexual abuse is "exacerbated by [the] circulation" and viewing of images documenting that abuse). These injuries include "the emotional and psychic" pain of knowing that the images are being viewed, *id*. at 759

n. 10, as well as the repeated violations of the individual's privacy interests. *Id*. at 758 n. 9; *see also Ashcroft v. Free Speech Coal*., 535 U.S. 234, 249 (2002) ("Like a defamatory statement, each new publication [of the images] . . . cause[s] new injury to the child's reputation and emotional well-being.").

Plaintiffs are victims who were harmed by this defendant's possession of their child sex abuse images. Visual depictions of a prepubescent child's rape and sexual exploitation are "matters of a highly sensitive and personal nature." *See, e.g.*, *Femedeer*, 227 F.3d at 1246. Congress and the American people have recognized the fundamental affront to human dignity and personal privacy that child pornography represents and have chosen through public policy to make possession, distribution, receipt, transportation, and production of child sex abuse images punishable by significant criminal penalties. The mere receipt of such images subjects an individual to a mandatory minimum federal prison sentence of five years. *See* 18 U.S.C. § 2252A(a)(2). Such public policy determinations, while not dispositive, support the notion that the current litigation involves matters that are highly personal in nature and of the utmost intimacy so that Plaintiffs deserve the protection provided by proceeding under pseudonyms.

**B.    DISCLOSURE OF IDENTITY WILL CAUSE CONCRETE AND RENEWED HARM**

The Tenth Circuit recognizes anonymity as appropriate where there is real danger of physical harm or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. *See Coe*, 676 F.2d at 416 (citing *Roe v. Ingraham*, 364 F.Supp. 536, 541 n.7 (S.D.N.Y.1973), recognizing the procedure as proper where "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid."); *see also M.M.*, 139 F.3d at 803;

*Femedeer*, 227 F.3d at 1246; *Luo*, 71 F.4th at 1296.  In *M.M.*, the court stressed that anonymity requires more than speculative embarrassment.  139 F.3d at 803.  In *Luo*, the court affirmed denial of pseudonymity in part because the district court found the particular balance there did not justify overriding openness, especially where the plaintiff had herself publicized related matters and where the alleged assailant was not the defendant.  71 F.4th at 1298-1303.  This case is materially different. Plaintiffs here have not sought publicity.  They seek only to avoid being publicly identified in connection with known CSAM series that continue to circulate among offenders.  And unlike the more attenuated privacy concerns in *Luo*, the threatened harm here is tied directly to a long-documented population of offenders who actively collect, trade, discuss, and sometimes attempt to identify the children depicted in abuse material.

The Plaintiffs have provided individualized accounts of stalking, doxxing, online harassment, extortion, and persistent psychological injuries; concrete and substantial harm, not merely speculative embarrassment.  *See M.M.,* 139 F.3d at 803.  [*See* Declaration of Hepburn (Ex. A); Declaration of Southworth (Ex. B)].  For example, Lily of the Vicky series has been stalked online and by email by apparent pedophiles and CSAM consumers who propositioned her and made lewd inquiries; one such individual was criminally convicted of transporting her abuse images and stalking her.  [*See* Declaration of Hepburn (Ex. A) ¶ 4].  April is currently being actively stalked online, and there are ongoing discussions within offender forums regarding her whereabouts and personal safety.  [*See* Declaration of Southworth (Ex. B) ¶ 6].

Lily, Sarah, Sloane, Violet, Maria, April, Julie, and Aster are in the same position, and the circulation of their images causes them similar injuries.  Moreover, all Plaintiffs are particularly vulnerable to retaliation.  There are many individuals who have expressed animosity towards Lily

and her supporters as a result of appellate cases.  There is little reason to believe these same sentiments do not hold true for Sarah, Sloane, Violet, Maria, April, Julie, and Aster.  In fact, the injury for which the Plaintiffs bring their claim would be incurred as a result of the disclosure of their real identities.  All these harms, which are severe and can be lifelong, would be compounded should Plaintiffs' identities be revealed to the world.  Public identification would create fresh, concrete injury for Plaintiffs due to renewed targeting, re-traumatization, and loss of security.

## C.    THERE IS AN ABSENCE OF PREJUDICE TO THE DEFENDANT

Under the Tenth Circuit's framework, the Court must weigh Plaintiffs' need for anonymity against any prejudice to Defendant.  *M.M.*, 139 F.3d at 803; *Luo*, 71 F.4th at 1301-03.  That balance strongly favors Plaintiffs here because pseudonymity in the public record will not impair Defendant's ability to understand the claims, conduct discovery, test damages, or present any defense.  This suit is against a private party, and the core liability facts arise from his criminal conviction and the victim-identification process already undertaken by law enforcement.  This is therefore not a case in which anonymity prevents Defendant from knowing who is suing him or meaningfully hampers investigation.  The Defendant's status is an important factor in determining whether to permit Plaintiffs to proceed anonymously.  Unlike the typical defendant in a civil suit, the Defendant in this case is not "innocent."  He has been declared guilty of criminal felonious acts, which form the basis for this civil action.  The Defendant's conviction for criminal acts against Plaintiffs collaterally stops him from challenging the factual basis for this lawsuit.  18 U.S.C. § 3664(l).  The Defendant is, in law and in fact, guilty of acts against Plaintiffs, which result in civil liability.

Plaintiffs are not strangers to the Defendant.  While their actual legal identity is unknown,

their child sex abuse images are intimately familiar to the Defendant, and his possession of those images is the reason he is now civilly liable.  Unlike a defendant in a purely civil suit, the Defendant in this case is not prejudiced by not knowing Plaintiffs' true identities since the underlying facts were already judicially determined and are indisputable.

In fact, knowing Plaintiffs' identities does nothing to advance the Defendant's case.  The salient facts at issue concern his possession of their images, which is well documented.  Although Defendant may believe that he has legal defenses, assertion of such defenses is in no way impeded by not knowing their legal names.

Although Plaintiffs are widely known within the child pornography consumer community by their series names and pseudonyms, they are not public figures.  Their rape and sexual exploitation, and their continued victimization through distribution of child pornography images thrust them into the child pornography community totally against their wishes.  There is little to be practically gained from knowing their legal names.

**D.     THE PUBLIC INTEREST IS ADEQUATELY SERVED WITHOUT DISCLOSURE**

The public interest in this litigation, if any, will not be furthered or enhanced by knowing Plaintiffs' legal identities.  The Defendant's crime resulted in little or no publicity.  Moreover, there is nothing significant or newsworthy about Plaintiffs' identity.  On the contrary, their stories and any media coverage of their efforts to obtain restitution would be based solely on the public knowing them by their pseudonyms.  In terms of the media's ability to cover this litigation, allowing Plaintiffs to proceed under pseudonyms is preferable to closing the courtroom or sealing the record since the facts and the record can be publicly revealed without further harming them. The public will still know the nature of the allegations, the identity of the defendant, the legal

theories asserted, the Court's reasoning, and the outcome of the case. The public can therefore monitor the functioning of the judiciary and assess the Court's rulings without knowing Plaintiffs' legal names. In contrast, disclosure of Plaintiffs' names adds little to public understanding while imposing a grave and asymmetric burden on the individuals whose childhood abuse is at issue.

Other than closing the courtroom or sealing the record, there is no easily implemented alternative mechanism for protecting Plaintiffs' confidentiality. Proceeding under a pseudonym actually enhances the public's ability to participate in the litigation by obviating the need to seal or otherwise restrict documents and court proceedings. Since there is no familial or other direct relationship between the parties, there is no need to cloak any of the proceedings in secrecy once Plaintiffs' identities are protected. There is nothing in the underlying criminal case or the materials submitted in the civil case, which will likely lead the public to discover Plaintiffs' identities. Allowing them to proceed under pseudonyms properly balances their need for anonymity against countervailing interests in full public disclosure. It also provides other victims with some comfort that they can seek appropriate legal redress without fear of disclosure of their identities. Allowing pseudonymity here also serves a broader public interest recognized by courts in sexual-abuse cases: encouraging victims to seek judicial relief without fear that the court process itself will amplify the trauma.

**CONCLUSION**

For these reasons, the Court should permit Plaintiffs to proceed under pseudonyms throughout this litigation. Plaintiffs seek anonymity in connection with allegations that are exceptionally intimate, degrading, and traumatic. There is a fundamental privacy interest which is violated by the production, distribution and possession of child pornography. Exposure of

victims' legal identities only compounds that violation.  In this case, the balance of privacy, safety, fairness, and public interest decisively favors allowing Plaintiffs to proceed under pseudonyms.  For all the above reasons, Lily, Sarah, Sloane, Violet, Maria, April, Julie, and Aster respectfully request that this Court allow them to proceed in the above-captioned matter with pseudonyms.

DATED this 19th day of May, 2026.

JAMES DODGE RUSSELL & STEPHENS, P.C.

/s/  Mitchell A. Stephens
Mitchell A. Stephens
Jordan Pate

*Counsel for Plaintiffs*